May it please the court. Good morning. My name is Drexel Bradshaw and I represent Identity Arts. To dismiss my client's complaint at the pleading stage is only possible if the district court was correct when it took the commercials at issue, the public courtesy messages at issue, and turned the room of the scene viewed on the screen 180 degrees. It's as though when viewing these commercials it were to ask this court to understand that the important activity that occurred in this courtroom today was what occurred in the visitor's gallery. The important activity that really occurred in this room today is what this court will do with each of the cases it's heard. And the important actor in each of these commercials was not the scene on the screen. The important actor in each of these commercials was the telephone ringing in the audience. That is the important distinction and the important understanding as to why these I'm sorry. I thought I saw the telephone was ringing on the screen. No, Your Honor. In fact, that's They had somebody in the audience actually in the theater? Certainly, Your Honor, has been to an AMC theater with theater style seating with surround sound speakers everywhere. As this commercial was presented, the cell phone rang not anywhere near the screen. The cell phone rang in the back left-hand side of the room. They had some guy there with a cell phone? No, Your Honor. That's the speaker from which the sound emanated. So it appeared as though So when you say it's not on the screen, you're really just pulling a leg here. No, Your Honor, I'm not. I mean, stuff that comes out through the speakers and on the screen, it's all part of the performance. I mean, it doesn't matter whether it's on the left or on the right or stereo or Dolby or any of that stuff. It's all stuff that was part of the performance. All stuff that was part of the performance, and that's correct. It wasn't some guy in the audience saying that they had there with a cell phone, right? It wasn't an actual man. No, Your Honor, it was not. So I don't know what you're talking about, about the audience or anything else. I mean, this is just you've just lost two and a half minutes on nonsense. Why don't you get to what this case is about? I believe I am, Your Honor, in that the sound that emanated from the speaker Not in any way that I've been able to perceive. That's correct, Your Honor, nor was the District Court able to perceive that at the discovery stage on a setup much like is presented here today. Because to understand where the sound was coming from, where the cell phone was actually ringing, you need to have experienced the commercial in the way it was presented to audiences across the country. And that is with the sound ringing from within the audience's audio range back in the back left corner of the room, nowhere near the theater screen, nowhere near the action that was occurring on the screen. And the action that was occurring on the screen is a theatrical device that we discussed in our brief known as the MacGuffin. It's a distraction, a distraction from what's really going on, which is the interruption of a theatrical movie trailer. Mr. Bradshaw, are you saying that the pleadings did not sufficiently describe the sound of the telephone? No, Your Honor. I believe that the pleadings and the opposition to my colleague's motion spelled out where the sound was coming from. But it was impossible for the District Court to hear that on the setup that had been offered. All of these were submitted and attached as exhibits to the amended complaint at issue. But the ---- Did you make a motion to do what Applee has done in this case and show it to the Court? The District Court, in fact, did view the subject spots but was unable to ascertain the source of the sound based on the way that these things were presented. And that's been in part ---- You had a choice in trying to make a better presentation. You know, you could run a speaker all the way to the back. You know, we have backs of rooms too in here. Yes, Your Honor. It's not so hard. It's not so hard. It's sort of silly to be sitting here arguing, can't imagine what it's like to have a sound coming from the speaker in the back of the courtroom. I can close my eyes and imagine it right now. Or the theater. I mean, I've been to the theater. I know what these things sound like. I know that they have various speakers and sometimes the sound travels around because the action travels around. It's really not hard. I mean, this is the 21st century. We're not sitting here watching silent. You know, we didn't grow up on silent movies. Your Honor, the only point ---- Oh, maybe in Cuba. You've used five of your ten minutes and you haven't gotten to the issues of why the court may or may not have erred in finding no substantial similarity. You haven't gotten to the issue of whether or not you're bound by the JGP case, the position you took in that. You haven't gotten to the issue about whether the license agreement bars you. Your Honor, that's correct. And so I'll move on having, I believe I've made my point. As to the G. Jeffrey Partners case, in order for judicial estoppel to apply, it must be against the same adversary in a similar context. In the G. Jeffrey case, Identity Arts and Best Buy were co-defendants. They were on the same side of the case. And furthermore, an issue in this case is not foe buying. It's not buying them. It's buying you. And you were a party. They agree with that. Yeah. Correct. And we're not dealing here with the commercials that were produced by G. Jeffrey. In this case, we're dealing with the commercials that were prepared by Best Buy as infringing on Identity Arts copyright. The point is your characterization of the commercials in the J.G.P. case was diametrically 180 degrees opposite of your characterization of those commercials in this case. And the position taken by the appellee is to blow a whistle and say, wait a minute. You took a diametrically different position to your benefit in that case. You're stuck with it. Now, why isn't he right? It's not right because the commercials at issue were different commercials entirely. The commercials in the G. Jeffrey case were one produced by a Canadian advertising agency. The ones produced here are both by American companies. On the one hand, my client, and on the other hand, Best Buy. So we're dealing with entirely different commercials. What was applicable in both cases was the urging by one party or another as to the application of this circuit's law applicable to copyright infringement and whether there's substantial similarity. The substantial similarity, I think, point is best understood beginning with the understanding that the scene was not that presented on the screen. That the scene presented on the screen was a mere MacGuffin, a theatrical device used to deceive a viewer from ascertaining the true character in the movie, in this case the cell phone ringing. And that sequence in the commercials before this court are virtually identical. Whether there's someone on the screen wearing Asian garb or cowboy garb or submarine commander garb is really irrelevant to the understanding as to the sequencing of events and the title cards and the fast pace. In fact, all of these commercials were between 35 and 45 seconds in length. And addressing it in that perspective, when you look at them and you take, remove from the analysis whether someone's wearing a certain kind of costume or a different kind of costume, you see that they're structured. What is the similarity? The similarity, Your Honor, is that there's a flash on the screen of a scene. It goes to black. There's a title card with some language in there. It goes to another tense scene, another title card that is explaining the action very quickly. Then the characters in each of the settings rise to some point where absolute silence is required. It's then interrupted by the true main character in this film, in these short pieces, which is the cell phone ringing in the background, followed by the discussion of please turn off your cell phones so as not to spoil the movie. So the similarity is the idea of a cell phone ringing that is disturbing the movie. That's the primary intent of the commercial. Yes, Your Honor. What we were prevented from doing at the pleading stage of this case is demonstrating for the district court all the myriad ways that movie companies can present cell phone courtesy messages in ways that are not similar to this. We had no opportunity to do that. And that would have been more appropriate at the summary judgment stage. The question is not whether they can do it a different way, because there's always a multitude of different ways of doing any of these things. The question is whether this way is protected. And, you know, you've got your license, which says it isn't. You've got your estoppel from the prior case that says it isn't. And you just have the law on the circuit that says the difference between ideas and expression. That's correct. All you've got is an idea. All you've got is an idea that is that you have some undefined action on the screen, which could be anything and often is. They're all quite different. And something that somebody in the audience does interrupts the action. So the gag there that something that somebody could do in the audience could interrupt what's going on on the screen. So, you know, that's a nice gag, but it's just an idea. It's not an expression. I would contend that it's an expression of an idea the way it was presented by my client and subsequently by Best Buy. It must have been the particular tune they used, the particular cell phone tune. I believe, in fact, they were virtually identical. Good morning, Your Honors. David Martinez of Robbins Capital, Miller, and Cerisi, on behalf of Respondent Best Buy. May it please the Court. The Court has graciously allowed me to play for the Court a DVD of the subject videos. Just a housekeeping question. It's about three minutes long. It's going to be about four minutes by the time it's all said and done so that I can prepare accordingly. Will that time be counted against my time, Your Honors? Sure. It will? Yeah. Okay. Let me then quickly start with the concept of judicial estoppel. Judicial estoppel, of course, requires a showing of clearly inconsistent positions, the first one of which is adopted by one tribunal to the detriment of another party or to the unfair advantage of the party advancing the position. The third element, of course, is permissive, and that is the holding of the Hamilton and Dunmore decisions by the Ninth Circuit and the Gagne and Sinopsis decisions by the district court. In the JGP case, there was no adoption by them of a position which was detrimental to you. In fact, you shared that position. That is correct, Your Honor. How would it be detrimental to you? That is not the – it would not be detrimental to us, Judge Bayer. It was detrimental to the people who lost. It would be detrimental to the people who lost, and it would be an unfair advantage to the – Even though those people who lost aren't in this case? That's correct. The concept of judicial estoppel is designed to prevent – to preserve the integrity of the judicial system by preventing parties from taking inconsistent positions. And thus, in the Hamilton and Dunmore cases, the courts held that an adversarial relationship is not required, detriment to the opposite party is not required. We have raised and identified a number of inconsistent positions in the D. Jeffries case, and I want to just focus the Court's attention on three. The first one is the argument that the extrinsic test that's been the law in this circuit for many decades should not apply to commercials. They took the inconsistent position in the D. Jeffries case, which was adopted by the Court. In that case, they argued that the extrinsic test does apply. Also, analysis of the elements of the extrinsic test, submarine, which is appellant's identity arch work was the same work in both this case and the D. Jeffries case. And in analyzing the elements of the extrinsic test, the identity arch argued in D. Jeffries that the characters, for example, were the true characters in the spots, that the setting was the American wilderness or gymnasium or a submarine. And it also argued that dialogue was the actual dialogue between the characters. In this case, it has taken diametrically opposed positions by arguing that, you know, the setting is American wilderness. Kennedy, in order for you to prevail, does there have to be a decision that this prior one is results in judicial essapol? Yes, Judge Hugg. There has to be a prior decision that is. In order for you to prevail on substantial similarity and all of that? Well, our argument is that the identity arch is judicially estopped from taking inconsistent positions. I know that, but is that the only argument you have? No, sir. Let me move on. Well, that's what I'm getting at. Time is going by and we're using it all up on judicial estoppel. Understood. The next issue is whether this can be decided on a motion for judgment on the pleadings. The extrinsic test is uniquely a test for the court to apply. The court, district court, is in the best position to assess whether or not a substantial similarity can be decided based on a motion for judgment on the pleadings. The Ninth Circuit long ago held that courts can do that, particularly where the subject works are attached to the pleadings or subject to judicial notice. There is a myriad of cases that have followed the Ninth Circuit's opinion in Christensen. We cite those in our briefs. The argument that the court should not have done so because the identity arch was deprived of expert testimony is inaccurate. In fact, they submitted expert testimony both in support of their motion for a preliminary injunction and in support of their opposition to the motion for judgment on the pleadings. We, on the other hand, were not we did not have the benefit of expert testimony. The district court analyzed, approved their request for judicial notice of the expert testimony, analyzed it, and concluded that it was insufficient to establish substantial similarity. With respect to the issue of discovery, we the court in fact had other cell phone courtesy message commercials before it. When it adjudicated this case, it had the commercials from the cell phone courtesy messages from the G. Jeffries case. So it indeed had others. As the Ninth Circuit concluded in the Funky Films, the recent Funky Films case, court found that additional discovery would not change the fact that the two works lack any concrete or articulable similarities, end quote. I think you better get started on your performance. Yes, sir. Thank you. Thank you. How's it moving? The next one is called Buffalo. This is one produced by your people. Yes, sir. The first one is a... This one is called... This one is called... This one is called... This is called... The next one is called... Welcome to Nashville! It's coming from the mirror! The last one is the turn of the corpse. What is this loud moose over here? What is that? It's not a moose! It's a moose! It's a moose! The only similarities that we've heard about are essentially the bare outline of this idea or concept of a cell phone courtesy message styled as a movie trailer. The so-called elements are nothing more than scenes of fare. Well, this idea that your opposing counsel said that in a real theater the phone would come from way back there. That is a generic element, Your Honor. The phone ringing is not dialogue. It's a generic element that merges with the idea of a cell phone courtesy message and the scenes of fare doctrine. Scenes of fare doctrine basically provides that elements that are necessary or standard in the treatment of an idea are not protectable. When you have a cell phone courtesy message, you must have a false setup. You must rely on conventions that trick the audience into thinking that this is a movie trailer. You must have a phone ringing. And you must have some way to communicate to the audience that the phone ringing is coming from the audience and not from the movie. Those are scenes of fare. They're not protectable. Lastly, there's an argument under Metcalf versus Bojko as to whether a string of unprotected elements are in and of themselves protectable. This is not Metcalf by any stretch, nor is this the open yoga decision, which was also issued by the same judge in the district court. This is not 26 yoga positions in the same order with two breathing exercises at a particular temperature. Based on a viewing of the particular works, the elements are completely different. This is also not the Metcalf case where we – that was based on the City of Angels TV series where there were over a dozen very concrete elements. I think we're familiar with the case. Your time is up. Thank you. Thank you, sir. We'll give you a minute for rebuttal, if you'd like to take it. I won't even use all of that. I just want to point out that counsel's contention that for cell phone courtesy messages that you must necessarily rely on a cell phone ringing in the audience and you must rely on the setup that we've provided here in our protected copyrighted material with the action occurring on screen and the cell phone ringing somewhere else is patently false. In fact, that's the point that we were not permitted to demonstrate before the district court. There are many, many ways to provide cell phone courtesy messages that don't rely on the same setup, that don't rely on a cell phone ringing within the audience. And that's why a decision under Rule 12-F was inappropriate in this case. Thank you. Okay. Thank you. Okay. I'm sorry. You will stand for a minute. We are adjourned.
judges: Kozinski, Hug, Bea